```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JEFFREY LIGGINS,

                          Plaintiff,

        -against-                                              REPORT AND
                                                               RECOMMENDATION
NEW YORK CITY DEPARTMENT OF
CORRECTION, WARDEN OLIVER, Anna M.                             04 Civ. 9597 (SCR) (GAY)
Kross Center, DEPUTY WARDEN OLIVO,
Anna M. Kross Center, CAPTAIN ROCCO,
Anna M. Kross Center, CAPTAIN CRUZ,
Anna M. Kross Center,

                          Defendants.
-------------------------------------------------------------X
```

TO THE HONORABLE STEPHEN C. ROBINSON, United States District Judge:

Plaintiff Jeffrey Liggins, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against defendants for their alleged deliberate indifference to a threat to his safety. Liggins, an inmate incarcerated at the Marcy Correctional Facility, alleges that defendants failed to protect him from an assault by fellow inmates during his detention at the Anna M. Kross Center at Rikers Island. Presently before this Court is defendants' motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), on the grounds that (1) plaintiff fails to allege that defendants were deliberately indifferent to his safety needs, (2) plaintiff fails to allege that the individual defendants were personally involved in the alleged constitutional deprivation and (3) the New York City Department of Correction is a non-suable entity. For the reasons that follow, I respectfully recommend that defendants' motion should be granted.

## I. RULE 12(b)(6) STANDARD

In evaluating a motion to dismiss, this Court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). In doing so, the Court "must view all allegations raised in the complaint in the light most favorable to the non-moving party . . . and 'must accept as true all the factual allegations in the complaint.'" Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996) (quoting Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163 (1993)) (citations omitted). For purposes of evaluating a 12(b)(6) motion, the complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation and citation omitted). Further, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). *Pro se* complaints and supporting papers must be read "liberally" and interpreted to "raise the strongest arguments that they suggest." See Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quotation and citation omitted). A court should not dismiss a *pro se* complaint "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hughes v. Rowe, 449 U.S. 5, 10 (1980).

## II. FACTS

The Court accepts as true the following facts taken from the complaint.

On July 4, 2003, at approximately 3:00 p.m., plaintiff was attacked by

approximately five other inmates. They pushed plaintiff up against a wall, punched him in the face, neck and chest and robbed him of his gold cross, eyeglasses and Rikers Island identification card. The attack occurred near an unmanned guard booth, known as the T-Post, which was usually staffed with as many as eight officers. Plaintiff chased his attackers 400-500 feet down a corridor until they disappeared into the crowd of inmates returning from the recreation yard. Minutes later, Recreation Captain Cruz arrived[1] and, after questioning plaintiff, Cruz escorted him back to the scene of the attack. Plaintiff attempted to locate his stolen property but found none of the items. Cruz then escorted plaintiff back to his housing unit. Plaintiff asked whether Cruz could relocate him to another building for safety reasons. Cruz replied, "I can't move you until I return on Tuesday but I can move you to another house on the other side of the building." Plaintiff was moved to the other side of the building later that evening. Plaintiff asked Cruz why the T-Post was unmanned; Cruz replied "it's a holiday."

On July 17, 2003, plaintiff informed Deputy Warden Olivo of the July 4th incident. Olivo stated he was unaware of the attack and, as he left the unit, he radioed Captain Cruz. Later that evening, plaintiff approached Captain Cruz and inquired about the status of the investigation and whether an incident report was ever prepared. Cruz answered that the incident report had just been done that day. Plaintiff also asked about the status of his request to be moved to another building. Cruz turned to Security Captain Rocco, who was standing nearby, and said to him "this is the guy that was assaulted and needed to be moved." Plaintiff remained at the Anna M. Kross Center

---

[1] Prior to Cruz' arrival, plaintiff apparently reported the incident to four correction officers who were blocking the corridor.

until July 29, 2003, at which time he was transferred to a state correctional facility.

Plaintiff was slated to return to Rikers Island prior to a scheduled court appearance on September 16, 2003. In the interim, plaintiff wrote a letter to Warden Oliver in which he requested that he be housed in a different building upon his return to Rikers Island. Oliver did not respond to plaintiff's letter.

On September 15, 2003, plaintiff was transferred back to Rikers Island and was again housed in the Anna M. Kross Center. He mentioned the July 4th assault to the intake officer and voiced his fear that he might run into his attackers. The intake officer replied, "I'll make a note of it on your card and let Captain Rocco, the security captain, know; he's working tonight." Later that evening, plaintiff saw Captain Rocco in the hallway and reminded him of the July 4th incident; after recalling the situation, Rocco stated that he wanted plaintiff out of the building and that plaintiff would be moved after his intake process was completed.

On October 3, 2003, Deputy Warden Olivo toured plaintiff's housing unit. Plaintiff spotted Olivo and reminded him of the July 4th incident. Olivo sent over a female officer to speak to plaintiff. She listened to plaintiff's complaint, wrote down some information and told plaintiff she would look into it and get back in touch with him.

On October 8, 2003, at approximately 3:45 p.m., Captain Rocco was conducting a search of plaintiff's building. After the search, plaintiff approached Rocco and reintroduced himself; Rocco immediately recognized plaintiff. Plaintiff asked Rocco what had become of his promise to relocate plaintiff to another building. Rocco replied, "I've been trying to move you, Liggins, but they wouldn't allow me." At approximately 8:00 p.m. that evening, plaintiff was moved to the George R. Vierno Center.

## III. DELIBERATE INDIFFERENCE

Plaintiff contends that defendants violated his Eighth Amendment rights when they failed to protect him against an attack by fellow inmates.[2] The Eighth Amendment requires prison officials to take reasonable measures to protect inmates against violence by other inmates. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, the failure to protect an inmate from attacks by fellow inmates rises to the level of a constitutional violation only where prison officials exhibit "deliberate indifference to a substantial risk of serious harm to [the] inmate." See id. At 828. In order to state a claim that defendants were deliberately indifferent to his safety, plaintiff must assert (1) that he was incarcerated under conditions posing a substantial risk of serious harm, (2) that defendants had actual or constructive notice of a specific risk to his safety and (3) defendants failed to take steps to protect him from injury. See id at 834; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994); Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). Further, in order to establish personal liability under 42 U.S.C. §1983, plaintiff must prove, inter alia, that the defendant caused the deprivation of plaintiff's rights. See Taylor v. Brentwood Union Free Sch. Dist., 143 F.3d 679, 685 (2d Cir. 1998) (citation omitted). Therefore, plaintiff must also assert that defendants were personally involved in the alleged constitutional deprivation in at least one of four

---

[2] In his Memorandum of Law in opposition to the instant motion, plaintiff also states, in conclusory fashion, that defendants violated his procedural due process rights. To the extent plaintiff's complaint may be broadly construed to allege said claim, it nonetheless must be dismissed. Plaintiff's alleged physical injury was not caused "by the sort of abusive government conduct that the Due Process Clause was designed to prevent." See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).

ways: (1) direct participation; (2) failure to remedy the wrong after learning of the violation through a report or appeal; (3) creating a policy or custom under which unconstitutional practices occurred; or (4) gross negligence in managing subordinates who caused the unlawful condition or event. See Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

Here, plaintiff has not alleged that the defendants knew of and disregarded a substantial risk to his safety. Plaintiff does not allege that, prior to the assault, there were any general or specific threats made against him or that he perceived himself to be at risk of harm; nor does he allege that he informed a prison official prior to the assault of any perceived risk to him. Plaintiff, it seems, had no particular reason to fear for his safety prior to the attack and, apparently, does not know the identity of his attackers. He does not allege that defendants were present at the time and place of the attack and failed to act at all or act promptly. Instead, plaintiff asserts that the defendants knew or should have known that leaving the T-Post unmanned would result in an attack. Plaintiff's allegation of a general dangerous prison condition, however, does not equate to an allegation that defendants had knowledge of a specific danger to plaintiff himself, even if a manned T-Post might have prevented the attack from occurring.[3] In sum, plaintiff "identifies no evidence tending to show that the assault was anything other than a random act of violence, unforeseeable by [defendants]." See Smiley v. Westby, 1994 WL 519973, at *8 (S.D.N.Y. 1994). As to plaintiff's allegation that defendants failed to investigate the assault and, therefore, failed to protect him

---

[3] In any event, plaintiff does not allege that any or all of the defendants were responsible for ensuring that the T-Post was manned.

6

against the possibility of future attacks, fear of future assault does not constitute a "sufficiently serious" injury essential to establishing the objective prong of an Eighth Amendment claim.  See Cruz v. Hillman, No. 01 Civ. 4169, 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002); Hudson v. Greiner, No. 99 Civ. 12339, 2000 WL 1838324, at *7 (S.D.N.Y. Dec. 13, 2000).  Accordingly, I conclude, and respectfully recommend, that defendants' motion to dismiss should be granted.

## IV.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have ten (10) days from receipt of this Report  to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections.  See Fed. R. Civ. P. 6(e).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Small v, Secretary of H.H.S., 892 F.2d 5, 16 (2d Cir. 1989).

Requests for extensions of time to file objections must be made to the Honorable Stephen C. Robinson and not to the undersigned.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JEFFREY LIGGINS,

                Plaintiff,

    -against-

NEW YORK CITY DEPARTMENT OF
CORRECTION, WARDEN OLIVER, Anna M.
Kross Center, DEPUTY WARDEN OLIVO,
Anna M. Kross Center, CAPTAIN ROCCO,
Anna M. Kross Center, CAPTAIN CRUZ,
Anna M. Kross Center,

                Defendants.
---------------------------------------------------------------X

REPORT AND
RECOMMENDATION

04 Civ. 9597 (SCR) (GAY)

TO THE HONORABLE STEPHEN C. ROBINSON, United States District Judge:

Plaintiff Jeffrey Liggins, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against defendants for their alleged deliberate indifference to a threat to his safety. Liggins, an inmate incarcerated at the Marcy Correctional Facility, alleges that defendants failed to protect him from an assault by fellow inmates during his detention at the Anna M. Kross Center at Rikers Island. Presently before this Court is defendants' motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), on the grounds that (1) plaintiff fails to allege that defendants were deliberately indifferent to his safety needs, (2) plaintiff fails to allege that the individual defendants were personally involved in the alleged constitutional deprivation and (3) the New York City Department of Correction is a non-suable entity. For the reasons that follow, I respectfully recommend that defendants' motion should be granted.

10/19/05

## I. RULE 12(b)(6) STANDARD

In evaluating a motion to dismiss, this Court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). In doing so, the Court "must view all allegations raised in the complaint in the light most favorable to the non-moving party . . . and 'must accept as true all the factual allegations in the complaint.'" Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996) (quoting Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163 (1993)) (citations omitted). For purposes of evaluating a 12(b)(6) motion, the complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation and citation omitted). Further, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). *Pro se* complaints and supporting papers must be read "liberally" and interpreted to "raise the strongest arguments that they suggest." See Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quotation and citation omitted). A court should not dismiss a *pro se* complaint "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hughes v. Rowe, 449 U.S. 5, 10 (1980).

## II. FACTS

The Court accepts as true the following facts taken from the complaint.

On July 4, 2003, at approximately 3:00 p.m., plaintiff was attacked by approximately five other inmates. They pushed plaintiff up against a wall, punched him in the face, neck and chest and robbed him of his gold cross, eyeglasses and Rikers Island identification card. The attack occurred near an unmanned guard booth, known as the T-Post, which was usually staffed with as many as eight officers. Plaintiff chased his attackers 400-500 feet down a corridor until they disappeared into the crowd of inmates returning from the recreation yard. Minutes later, Recreation Captain Cruz arrived[1] and, after questioning plaintiff, Cruz escorted him back to the scene of the attack. Plaintiff attempted to locate his stolen property but found none of the items. Cruz then escorted plaintiff back to his housing unit. Plaintiff asked whether Cruz could relocate him to another building for safety reasons. Cruz replied, "I can't move you until I return on Tuesday but I can move you to another house on the other side of the building." Plaintiff was moved to the other side of the building later that evening. Plaintiff asked Cruz why the T-Post was unmanned; Cruz replied "it's a holiday."

On July 17, 2003, plaintiff informed Deputy Warden Olivo of the July 4th incident. Olivo stated he was unaware of the attack and, as he left the unit, he radioed Captain Cruz. Later that evening, plaintiff approached Captain Cruz and inquired about the status of the investigation and whether an incident report was ever prepared. Cruz answered that the incident report had just been done that day. Plaintiff also asked about the status of his request to be moved to another building. Cruz turned to Security Captain Rocco, who was standing nearby, and said to him "this is the guy that was

---

[1] Prior to Cruz' arrival, plaintiff apparently reported the incident to four correction officers who were blocking the corridor.

3

assaulted and needed to be moved." Plaintiff remained at the Anna M. Kross Center until July 29, 2003, at which time he was transferred to a state correctional facility.

Plaintiff was slated to return to Rikers Island prior to a scheduled court appearance on September 16, 2003. In the interim, plaintiff wrote a letter to Warden Oliver in which he requested that he be housed in a different building upon his return to Rikers Island. Oliver did not respond to plaintiff's letter.

On September 15, 2003, plaintiff was transferred back to Rikers Island and was again housed in the Anna M. Kross Center. He mentioned the July 4th assault to the intake officer and voiced his fear that he might run into his attackers. The intake officer replied, "I'll make a note of it on your card and let Captain Rocco, the security captain, know; he's working tonight." Later that evening, plaintiff saw Captain Rocco in the hallway and reminded him of the July 4th incident; after recalling the situation, Rocco stated that he wanted plaintiff out of the building and that plaintiff would be moved after his intake process was completed.

On October 3, 2003, Deputy Warden Olivo toured plaintiff's housing unit. Plaintiff spotted Olivo and reminded him of the July 4th incident. Olivo sent over a female officer to speak to plaintiff. She listened to plaintiff's complaint, wrote down some information and told plaintiff she would look into it and get back in touch with him.

On October 8, 2003, at approximately 3:45 p.m., Captain Rocco was conducting a search of plaintiff's building. After the search, plaintiff approached Rocco and reintroduced himself; Rocco immediately recognized plaintiff. Plaintiff asked Rocco what had become of his promise to relocate plaintiff to another building. Rocco replied, "I've been trying to move you, Liggins, but they wouldn't allow me." At approximately

8:00 p.m. that evening, plaintiff was moved to the George R. Vierno Center.

## III. DELIBERATE INDIFFERENCE

Plaintiff contends that defendants violated his Eighth Amendment rights when they failed to protect him against an attack by fellow inmates.[2] The Eighth Amendment requires prison officials to take reasonable measures to protect inmates against violence by other inmates. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, the failure to protect an inmate from attacks by fellow inmates rises to the level of a constitutional violation only where prison officials exhibit "deliberate indifference to a substantial risk of serious harm to [the] inmate." See id. At 828. In order to state a claim that defendants were deliberately indifferent to his safety, plaintiff must assert (1) that he was incarcerated under conditions posing a substantial risk of serious harm, (2) that defendants had actual or constructive notice of a specific risk to his safety and (3) defendants failed to take steps to protect him from injury. See id at 834; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994); Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). Further, in order to establish personal liability under 42 U.S.C. §1983, plaintiff must prove, inter alia, that the defendant caused the deprivation of plaintiff's rights. See Taylor v. Brentwood Union Free Sch. Dist., 143 F.3d 679, 685 (2d Cir. 1998) (citation omitted). Therefore, plaintiff must also assert that defendants

---

[2] In his Memorandum of Law in opposition to the instant motion, plaintiff also states, in conclusory fashion, that defendants violated his procedural due process rights. To the extent plaintiff's complaint may be broadly construed to allege said claim, it nonetheless must be dismissed. Plaintiff's alleged physical injury was not caused "by the sort of abusive government conduct that the Due Process Clause was designed to prevent." See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).

were personally involved in the alleged constitutional deprivation in at least one of four ways: (1) direct participation; (2) failure to remedy the wrong after learning of the violation through a report or appeal; (3) creating a policy or custom under which unconstitutional practices occurred; or (4) gross negligence in managing subordinates who caused the unlawful condition or event. See Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

Here, plaintiff has not alleged that the defendants knew of and disregarded a substantial risk to his safety. Plaintiff does not allege that, prior to the assault, there were any general or specific threats made against him or that he perceived himself to be at risk of harm; nor does he allege that he informed a prison official prior to the assault of any perceived risk to him. Plaintiff, it seems, had no particular reason to fear for his safety prior to the attack and, apparently, does not know the identity of his attackers. He does not allege that defendants were present at the time and place of the attack and failed to act at all or act promptly. Instead, plaintiff asserts that the defendants knew or should have known that leaving the T-Post unmanned would result in an attack. Plaintiff's allegation of a general dangerous prison condition, however, does not equate to an allegation that defendants had knowledge of a specific danger to plaintiff himself, even if a manned T-Post might have prevented the attack from occurring.[3] In sum, plaintiff "identifies no evidence tending to show that the assault was anything other than a random act of violence, unforeseeable by [defendants]." See Smiley v. Westby, 1994 WL 519973, at *8 (S.D.N.Y. 1994). As to plaintiff's allegation

---

[3] In any event, plaintiff does not allege that any or all of the defendants were responsible for ensuring that the T-Post was manned.

6

that defendants failed to investigate the assault and, therefore, failed to protect him against the possibility of future attacks, fear of future assault does not constitute a "sufficiently serious" injury essential to establishing the objective prong of an Eighth Amendment claim. See Cruz v. Hillman, No. 01 Civ. 4169, 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002); Hudson v. Greiner, No. 99 Civ. 12339, 2000 WL 1838324, at *7 (S.D.N.Y. Dec. 13, 2000). Accordingly, I conclude, and respectfully recommend, that defendants' motion to dismiss should be granted.

## IV. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Small v. Secretary of H.H.S., 892 F.2d 5, 16 (2d Cir. 1989).

Requests for extensions of time to file objections must be made to the Honorable Stephen C. Robinson and not to the undersigned.

Dated: October 19, 2005
White Plains, New York

Respectfully Submitted,

_____
GEORGE A. YANTHIS, U.S.M.J.